Good morning, your honors. May it please the court. Harini Raghupati with the Federal Defenders of San Diego on behalf of the appellate Mr. Escobedo-Gomez. Mr. Escobedo clearly invoked his right to counsel when he said, but yeah, okay, I guess I'll wait for the attorney. I mean, because I don't know what's happening. Like why or what? That's the statement you believe is the unequivocal invocation of counsel? Yes, your honor. What's wrong after that statement with the agent saying, okay, then you don't wish to speak to us? Because under this case law, if this court accepts that that is an unambiguous invocation, then under the case law, any question, even a question intended to clarify whether that's an invocation is not permissible. But isn't the question here not to clarify, but to make sure that when he says, here's this, and I've watched the tape and, you know, it's less than a forceful, it's less than a forceful statement. He says, okay, I guess I'll wait for the attorney. I mean, because I'm like, I don't know what's happening. Like why or not? Why or what? And the agent confronted with that statement says, okay, so you don't wish to talk to us. And you're telling us that that's the violation of Miranda. Yes, your honor. And I have two responses to that. The first is that the fact that Mr. Escobedo perhaps used colloquial phrases like I like doesn't cut against the clarity of the invocation. The Supreme Court has made clear. What about I guess? Nor does I guess. I think the common, the standard is how an ordinary person would understand the phrase I guess. And an ordinary person knows that I guess is simply a polite, perhaps deferential way of making a request. So let me let me tell you so that you understand my concern. What troubles me about your position in this case is we get a statement like that. And the agents then behave, I think, in a rather exemplary fashion. Put aside our case law for a second. They say, OK, so you don't want to talk to us. The guy says, no, no, I want to talk to you. They say, well, you can't unless you waive your right to an attorney. And he says, well, can I stop and start? And they say, sure. And then they make him sign the thing before. So they don't follow up this with incriminating questions. They follow it up with, as you say, clarifications. So does our case law really prevent the agents from asking somebody who makes that statement whether or not he really doesn't want to talk to them? Yes, Your Honor. Your Honor, I think the relevant question is Garcia. The relevant case is Garcia versus Long. And it says an unambiguous and unequivocal Miranda invocation cuts off questioning, even questioning intended to clarify that the accused is invoking his Miranda rights. Now, that's what the case law says. And my difficulty here is given the nature of the statement, do you think the agent should have said at that point, we're done? Or should they have said, are you invoking your Miranda rights? I think they should have said, we're done. And I think the most clear evidence here that the agents knew that Mr. Escobedo Gomez was invoking his rights was what Agent Madison said right after the invocation. So he said, so you don't wish to speak with us tonight? And I think if he had any uncertainty about what Mr. Escobedo was saying, the agent would have said, so do you want to talk to us or do you not? But the fact that he assumed the answer to that question, so you don't wish to speak with us. And if he'd said, do you want to talk to us or do you not, that would have been permissible. I don't think it's permissible. I think he should have had a. I take it your case is that once he says these words, the agents can say no more. Correct, Your Honor. But I'm saying that given that there was a Miranda violation here, the agent's subjective, it's an objective inquiry, but we can look at how the agents responded to his invocation to show us objectively a reasonable officer would have understood that he was invoking his rights to counsel. What's interesting about this is that I'm sure everybody has a different reaction, but if I look at the transcript, it seems a little bit equivocal. When I looked at the tape, it didn't seem equivocal at all. And if you take out the words, I guess, even the transcript is pretty clear. I'll wait for the attorney. And then he gives a reason because I don't know what's happening, which is the whole point of having an attorney. So what do we make of the I guess? Is that meaningful or not meaningful? I think that so I agree with Your Honor that watching the DVD is important because I think reading it on a cold record comes out differently than if you actually watch what happens in person. With respect to the I guess, I think that applying the ordinary person standard, it's simply a polite or deferential way of making a request. And the best example I could come up with is if I were to go to a restaurant and there were a menu and it had two options, there was chicken and ravioli, and I told the waiter, I guess I'll have the ravioli. There would be no doubt in the waiter's mind that I had just ordered the ravioli. He would put the order in and he would bring it to me when it was ready. Or would the waiter say, so you want the ravioli, don't you? I would not. You think the waiter would run off to the kitchen, as you said, as soon as you said, I guess I want the ravioli, and bring you the ravioli and say, oh, so you want the ravioli? That's what always happens to me. The waiter always confirms my order. Well, Your Honor, I think that I guess. The waiter here being the police officer didn't say, so you want a lawyer. He didn't say anything about a lawyer. He pivoted. And he said, so you don't want to wish to speak to us tonight, which is a separate issue. He didn't say, do you wish to speak to us without an attorney. That's correct, Your Honor. And I think that that goes to our second issue, which is that assuming that this court finds Mr. Escobedo's invocation was ambiguous, then under the court's case law, the agent is allowed, is required, actually, to clarify what Mr. Escobedo's intentions were. What he should have clarified is whether he wanted an attorney, not whether he wished to speak to them. Right. And he should have made clear, he kept referring to the fact that in order to proceed with the interrogation, he would have to, meaning he was required, to waive his rights, plural. But, of course, under Miranda, he had the right to have an attorney with him and continue with questioning. And by conveying to Mr. Escobedo Gomez that he had to waive both rights in order to proceed with the interrogation, that was misleading. And this court has made clear that when a suspect receives two conflicting sets of warnings, as Mr. Escobedo did here, the written Miranda, pre-printed form, and then the agent's kind of extemporaneous advisals, the onus isn't on the defendant to have to sort out that confusion. The onus is on the agent to have to clearly explain his rights. Let me ask you a question about the tape that maybe Judge Graber and I view differently. What's our role as appellate judges with respect to the tape? Are we supposed to decide whether or not the district judge clearly erred in finding that there wasn't an unequivocal invocation, or are we supposed to make some sort of de novo finding looking at the events that we think it's unequivocal? So with respect to the words that Mr. Escobedo actually used, this court would apply a clear error standard, but then with respect to the legal question of whether those words constitute an unambiguous or unequivocal invocation, this court would apply de novo review. Well, but that's not the question I asked. My question is this. We're looking at the tape. So let's assume on paper I think this is an unequivocal invocation because he said, I guess. And then I look at the tape. And what's my role in looking at the tape? The district judge looked at it too. District judge made a finding. Do I review that finding for clear error? Do I review it de novo? Do I say, well, the judge thought the tape said this, but I think it says that. What's my role? Well, I think it depends on the finding that Your Honor is talking about. If the finding is that... Look, if I found these words were unequivocal, I wouldn't have to look at the tape. So let me just assume for a second that I think these words are equivocal on their face. But I want to make sure. So now I look at the tape. What role does the tape play in my decision? I think Your Honor can consider the tape as if it was first impression. Without regard to what the district judge's interpretation of it was? No, because this isn't a question of where the district court was making any kind of credibility findings or that kind of thing. All the time the district judge looks at documents and affidavits and makes credibility findings from them, and we defer to them. And I'm not sure what the answer to my question is. That's why I'm asking it. It's a strange situation because the district judge has no better situation than we are to look at the tape. But the district judge did look at the tape and made a determination from it. So what deference do we give to that? I stand by my position that the district judge isn't owed any deference in its finding that Mr. Escobedo's invocation was unclear. Because that's a legal conclusion. That's a legal conclusion, yes. And so if this court were perhaps disagreeing with the district court's finding that Mr. Escobedo said or didn't say something, then, of course, it would have to defer and review that determination for clear error. But since it's a legal question of whether or not this was a clear invocation and it's a constitutional question, the review is de novo. I see that I have a minute left if I may reserve. You may save that. Thank you, Your Honor. Good morning, Your Honors. Emily Kiefer for the United States. The district court here properly denied Escobedo's motion to suppress statements and found no Miranda violation had occurred. So the question for us is whether or not he unequivocally asserted his right to counsel. Yes. And there's really only two pieces of evidence on that. There's the written words and there's the videotape. Yes. The question is whether it was both unequivocal and unambiguous. Okay. So my question is, do I just look at those two and make my own determination of whether it was unequivocal or unambiguous? If it were just words, I would do that. Judge Graber is quite correct that it's a question of law. Now that the tape is involved, how does that bear on my appellate review of what the judge found? Well, I would answer you in two parts, Your Honor. I think that this court has before it the evidence that the district court had,  and this is de novo review, as my colleague mentioned. However, I think it is worth noting the very definition of ambiguous is when it's susceptible to more than one interpretation. In light of that, it is worth noting that the district court, reviewing the same evidence that this court is reviewing, interpreted the defendant's statements in the way that it did. Well, if we followed that, we'd never reverse anybody, which I'm sure our district court colleague would probably think is a really good idea. But it seems to me that it all comes down to how one interprets, I guess, because the remainder of everything says, I want an attorney, and then it explains exactly why, because I don't understand what's happening to me, which is precisely why people need an attorney in this situation. So take the words, I guess. So what's wrong with the everyday example that counsel gave? I guess I'll have the chicken. You know, I guess I'll wear the blue sweater today instead of the red sweater. Why is that ambiguous or equivocal? It's just a way of talking colloquially.  I do think that I guess is absolutely relevant to this course determination, and I think that I have a couple of my own real-world examples where I guess would be equivocal or ambiguous. It can be, but it isn't always, and that's the problem. And so certainly if you were asked to guess, you know, what do you think the high temperature will be today, and you're not familiar, you'd say, well, I guess it might be 80. That's a guess. That's a speculation. But in this context where it may not be. And in this context, Your Honor, I think it's really important to look at the full tape, all of the biographical questioning that occurred between the agent and this defendant. But our case law says it's not, and that's the problem. Nobody's contending that this was an interrogation that violated the Fifth Amendment because it was coercive. The question is whether this is an interrogation that by virtue of Miranda should have ended when he said these words, even if it was the world's most civil interrogation up to that point. So let's start. Do you agree that if we took the words, I guess, out of his statement, it would be unequivocal? I don't think so, Your Honor, and I would like to. So if he said, I'll wait for the attorney, and then explained why. I mean, because I don't know what's happening. So if he just said, I'll wait for the attorney, would that be an unequivocal assertion of Miranda rights? The three-part statement that the defendant made, including the statement that I guess, one has to look at it in its entirety. I'll break it down for you. Okay doesn't make any difference one way or the other, correct? I disagree. And the reason that I disagree is that one has to look at the question that was posed a mere 15 seconds prior. The question that the agent. Did that relate to the fact that he asked, in effect, why am I under arrest? They said, we can't tell you exactly why they couldn't. It's a separate question. And then he said, okay, yes, I guess I'll wait for an attorney because I don't know what's going to essentially. You're referring to the statement where he says, are we going to have the questioning with the attorney here or without the attorney here? Yes. And then he says, okay, I'll wait for the attorney. So I think that hurts your case, doesn't it? I disagree, Your Honor. If you look at the entirety of what preceded this three-part statement from the defendant, the defendant had already shown himself in the context of being advised of his Miranda rights, very able to answer unequivocally yes, nodding with his body, his facial expressions, his verbal statements. He says yes. When it comes then to the question, do you want to waive your rights? There's a flurry interchange about 15 seconds. Because that's a harder thing for a person to decide. Yes. He may understand it and then not be as adept verbally at explaining his choice. There's another point that really concerned me when I listened to the video, and that is in the transcript, this statement, the second sentence of the statement, has a question mark at the end. But I don't hear a question mark in this. I don't hear it as a question or an uncertainty. I hear him saying, I don't know what's happening, like why or what. I don't hear it as a question. It's an explanation, I think, of why he wants to wait for the lawyer. And I think that's one plausible interpretation of what the defendant said. I don't think it's the only one. So that's why I go back to my first question. If we're reviewing de novo, then we decide what's plausible, not the district judge, right? I agree that if it's the only way to interpret what the defendant said. No, no. See, that's the difficulty I'm having with this case. If we engage in de novo review of whether this is an unambiguous statement, whether it's a question or a statement, then we don't give any deference to the district judge's finding that it was a question, do we? I agree with that. What I would say, though, Your Honor, is that to be unambiguous, the statement must be susceptible to only one interpretation. If the statement is susceptible to two interpretations, even if one interpretation is better than the other, then that means the statement is ambiguous. And here the statement is susceptible to at least two interpretations. The agent on the scene, the district court below, both interpreted it in a way that the defendant was equivocal when he was asking, uncertain whether he was asking for counsel, and then asking follow-up questions. How could you say the agent didn't understand it when his direct next question, after the defendant said, I'll wait for my attorney essentially because I don't know what's happening or what, the agent says, all right, you don't. You don't wish to speak to us tonight. He quite clearly understood that the guy was asking for an attorney. Otherwise he wouldn't have said, so you don't wish to speak to us tonight. And when he said that, everything that follows, there isn't the word attorney mentioned in the agent's so-called effort to clarify. And the end of the short colloquy. I disagree, Your Honor. I think the fact that the agent phrased his question in the negative does not mean that the agent was certain that was what the defendant wanted to do. So my real-world example of how I guess is ambiguous. Say, for example, even you run the gamut of important questions to less important questions. Your spouse or partner asks you, do you want to buy this house? I guess I'll wait until we have money. So you don't want to buy the house now. It's a natural follow-up. We would understand that such a follow-up question would be appropriate in order to confirm. So you don't want to buy the house now. So the next question should have been on your analysis. So you don't want to speak to us without an attorney. And then he immediately said, no, I will. He doesn't ask him that. He could have just re-Miranda-ized him, could he not? He could have said, okay, you don't wish to speak to us. And then the guy volunteers, no, I want to talk to you. The agent should have at that point, it seems to me, said, look, let me go through this again. Let me give you the Miranda warnings all again because you've given me confusing answers. And what the agent did here, what the agent did here, off script, he was very careful in following this pre-printed form. When we went off the pre-printed form, the agent colloquially said to the defendant, essentially, this is what I'm trying to get an answer to, the question, which is. Oh, it's okay for the agent to be understood colloquially, but not for the defendant. That's really what you're telling us. No, Your Honor, and I think that if the agent had done exactly what was done, for example, in the case of Duckworth v. Egan, if the agent had said, okay, let's slow down. You have the right to an attorney. You have the right to remain silent. And if the agent had said what was said in Duckworth, which was, I have no way of providing you as an indigent defendant an attorney, but one will be appointed to you if and when you go to court, period. Do you wish to continue and speak with us? There's no doubt that under the Supreme Court's precedent in Duckworth v. Egan, that what the agent did there would have been proper. That's totally different from what happened here. There's nothing like that here. I just don't see it. So the agent essentially was asking whether he wanted to waive his rights in plural, and there was some confusion on the defendant's part. There was equivocation about whether he wanted to do that. And when the agent then, he's trying to return to the initial question he posed, which is, do you wish to speak with us without an attorney present? But he didn't say, do you wish to speak with us without an attorney present. That wasn't the follow-up. I could understand if that was the follow-up. The agent thought it was equivocal because it's in the next question. He doesn't say, do you wish to speak with us without an attorney. It's, all right, you don't wish to speak to us tonight. He doesn't say without an attorney. And this guy, I mean, I'm not sympathetic to him as committed a crime. You don't need the confession in this case. You caught the guy with 20 pounds of heroin. But that's a separate issue, isn't it? It certainly is a separate issue. And what I would say in response to Your Honor's inquiry is that basically the agent is asking, would you like to waive your rights in the plural format? And the defendant understands that being asked that question, he knows that his rights don't rise and fall altogether. In fact, this defendant pointed back to one of the rights that he retained. And that particular right that he retained included the right to stop questioning at any time and the right to stop questioning for purposes of consulting an attorney. So he understood. You have well exceeded your time, and I think we understand your position. Thank you, Your Honor. Thank you. You have a little bit of rebuttal time. So I wanted to give the Court some examples of similar invocations that have been held to be clear. I have three that I think are similar to Mr. Escobedo's use of the word I guess. The first is from Luna v. Lamarck, which is actually a case that the government cited, but the invocation that was found to be clear was, quote, while it sounds, pause, the way it's going, it sounds like I need a lawyer, pause, and I need help. And this Court held that that was a clear invocation of the right to counsel. Similarly, in Smith v. Endel, this Court held the following was clear. At this point, I think maybe you're looking at me as a suspect and I should talk to a lawyer. Are you looking at me as a suspect? And then third, in Schettelbauer v. Estelle, this Court held the following was clear. You know, I'm scared now. I think I should call an attorney. So if all of those invocations are clear, I don't think the I guess that Mr. Escobedo used is any different in kind in terms of clarity. The other point that I would point out is that when Agent Madison, after Mr. Escobedo invoked, he said, so you don't want to speak with us tonight, and Mr. Escobedo goes, no, I'll talk to you guys like, and if you watch the video, he kind of trails off and then he starts to look at the Miranda form. Because I think what's actually happening is he's willing to talk to the agents, but he wants an attorney present and he's trying to find the particular right on the form that advises him of that. But because Agent Madison sort of muddies up the subsequent advisal, he's. Yeah, I'm not sure he muddied up the subsequent advisal. He said, unless you waive your rights, we can't talk to you. And I think that was correct. At least at the moment, we can't talk to you unless you waive your rights. So I'm not sure the subsequent. If you're relying on the subsequent adviser, I think it's problematic for you. This has to be has to be unequivocal at the beginning because I don't find any difficulty in the subsequent adviser. If this was if this was equivocal. If I may answer the court's question, I agree that the main question is whether his invocation is equivocal. But I think that the agent saying you have to waive your rights is problematic because perhaps the agent's, you know, practical policy is we're not going to talk to someone once they lawyer up because we're just not going to. But practicalities aside, Miranda requires the option of proceeding with interrogation. No, Miranda does not entitle the defendant to be interrogated with a lawyer present. It only entitles him to have a lawyer if the if the government wants to interrogate him. The government can surely take the position that with a suspect that they just caught with 20 pounds of heroin in his car. We'd like to talk to you now. You don't have to talk to us. You want to get a lawyer. We may not want to talk to you at all. That's perfectly OK. Your client doesn't have a constitutional right to be interrogated. Does he? He doesn't have a constitutional right to be interrogated, but he doesn't have a lawyer to have a lawyer present. The governor chooses if the government chooses to interrogate or if he chooses if he agrees to be interrogated. You mean he can force the government to interrogate him? No, Your Honor, but that's not going to happen very often. I know for guys that catch with 20 pounds of heroin in their car, I could see the agent saying, look, if you want to talk to us now, that's fine. But we got you dead to rights. And you want a lawyer? Go get the lawyer and we'll see you in court. My final point. There's nothing wrong with that, is there? No, I don't think so. But my final point gets to the 20 pounds of heroin. The government has expressly waived that its use of the statements here were harmless. That's on page 29 of its brief. No, I understand. We're not at that point. I'm responding to your point that your client had a constitutional right to be interrogated with a lawyer present. And the answer is no, he has a constitutional right to have a lawyer present if he's interrogated. I agree, Your Honor. I misspoke in that phrasing. There are no further questions. Thank you. The case just argued is submitted, and we appreciate the arguments from both counsel. And I think we'll take about a 10-minute recess. All rise. Court stands in recess for 10 minutes.
judges: Graber, Hurwitz, Korman